O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>MARK DAVID WALLIN,<br>　aka "guy eff",<br><br>　　　　　Defendant. | Case No.: 2:22-cr-00334-MEMF-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 106]** |

　　　Before the Court is a Motion to Suppress filed by Defendant Mark David Wallin. ECF No. 106. For the reasons stated herein, the Court hereby DENIES the Motion to Suppress.

**I.　Background**

　　**A.　Factual Background[1]**

　　On April 28, 2021, Homeland Security Investigations ("HSI") Special Agent Derek Baker ("SA Baker") received information from Foreign Service National Investigator, James Young ("FSA Young"), from the HSI Attaché office in Vancouver, Canada about Skype user "Guy Eff" and his

---

[1] The Court's summary here is gathered from the evidence on the record.

alleged coercion of a Canadian minor ("MFV") to produce images depicting child pornography. ECF No. 106-2 at 26[2] ("Exh. 1"). MFV's mother reported to the local police service that she discovered sexually explicit Skype chats and child pornography images shared between MFV and "Guy Eff," which prompted HSI's investigation. *Id.* FSA Young provided SA Baker with investigation materials and seized data. *Id.* That data included Skype chats in which Guy Eff instructed MFV to produce pornographic videos. *Id.* at 27–28. The chats included conversations about MFV being twelve years old and Guy Eff directing MFV to set her Skype settings to not save conversations. *Id.* at 28. The data that FSA Young provided to SA Baker also included approximately twenty-nine still images produced by MVF in her bedroom between April 22, 2020, and April 26, 2020. *Id.* at 29.

On or about August 7, 2020, Special Agent Christopher Hertzog ("SA Hertzog") issued a summons to Microsoft Corporation, requesting subscriber information for the Skype account with the Skype name: "guy eff," and the Skype profile: "live:guyf715." ECF No. 106-4 at 5 ("Exh. 3"). Microsoft returned two documents, one titled "Skype Account Records," ECF No. 106-5 at 2 ("Exh. 4"), the other titled "Microsoft Account Records." ECF No. 106-6 at 2 ("Exh. 5"). The document titled "Skype Account Records" for live:guyf715 showed an account creation date of January 20, 2018, an account creation IP address of 75.82.201.73,[3] and a current email address of guyf715@gmail.com. Exh. 4 at 2. The document titled "Microsoft Account Records" returned a query for "guyf715@gmail.com," the registration profile associated with the "guy eff" Skype account, within the date range of April 1, 2020 to May 15, 2020. Exh. 4 at 2. This return showed "No Data Found" for a field that would have otherwise shown the account's IP connection history during the relevant conduct period. *Id.*

On August 19, 2020, FSA Hertzog issued a summons to Google for subscriber information of the Gmail account "guyf715@gmail.com." ECF No. 106-7 ("Exh. 6"). Google responded to the summons by providing an email address creation date of January 20, 2018; last logins (April 14,

---

[2] All page numbers herein refer to the corresponding exhibit page numbers filed with ECF 106.

[3] Nothing in the record indicates that the IP address associated with the creation of the Skype account was followed up on by investigators.

2

2020 and April 16, 2020—one week before the alleged conduct); and three unique IP addresses. ECF No. 106-8 ("Exh. 7).

On March 26, 2021, FSA Young issued a summons to Charter Communications, Inc., requesting subscriber information for the three unique IP addresses associated with the Gmail account "guyf715@gmail.com." ECF No. 106-9 ("Exh. 8"). Charter returned a "Subscriber Record" that identified Wallin, along with his address, username, and telephone number. ECF No. 106-10 ("Exh. 9"). From about April 29, 2021, through June 17, 2021, U.S. HSI agents conducted additional investigation, confirming that Wallin resided at the address provided in the information that Charter returned. Exh. 1 at 30–31.

On August 5, 2021, SA Baker submitted two Affidavits, one to search Wallin's apartment and the other to search his person. *Id.* at 2; ECF No. 106-3 at 2 (Exh. 2).[4] The Affidavits contained all the information related to the investigation outlined above, except for the information contained in Exhibit 4, which was the second document that Microsoft returned in response to the summons, titled "Microsoft Account Records." Exh. 1 at 26–31. This was the document that showed "No Data Found" for the account's IP connection history during the relevant conduct period. Exh. 4 at 2.

The portion of the affidavit that links Wallin to the alleged conduct reads as follows:

> e. On or about August 17, 2020, Microsoft returned the following:
>   i. Account Creation Time UTC: 2018/01/20/15:28:49
>   ii. Account Creation IP: 75.82.201.73
>   iii. Current Email Address: guyf715@gmail.com
> f. On or about August 19, 2020, a summons pursuant to 19 U.S.C. §§ 1509 was issued to Google, LLC for subscriber information of email address guyf715@gmail.com.
> g. On or about August 19, 2020, Google returned the following:
>   i. Name: guy eff
>   ii. E-Mail: guyf715@gmail.com
>   iii. IP Activity:

| Timestamp | IP Address | Activity Type |
|---|---|---|
| 2020-04-16 02:43:17 UTC | 2606:6000:6300:5200:7d77:80bc:9e9a:a38b | Logout |
| 2020-04-16 02:40:01 UTC | 2606:6000:6300:5200:7d77:80bc:9e9a:a38b | Login |
| 2020-04-14 00:36:59 UTC | 2606:6000:6300:5200:3108:5b41:71bd:fe82 | Logout |

---

[4] The statements in support of probable cause are identical in both affidavits. Herein, citations to the statements in support of probable cause for Exh. 1 (the search warrant for Wallin's apartment) also cover Exh. 2 (the search warrant for Wallin's person). The Court refers to the two exhibits collectively as the "Warrants" or the "Search Warrants." The Court separately refers to the affidavits contained in the Warrants as the "Affidavit" or "Affidavits."

| 2020-04-14 00:01:18 UTC | 2606:6000:6300:5200:cc31:9752:2cd7:11be | Login |

h. On or about March 26, 2021, a summons pursuant to 19 U.S.C. §§ 1509 was issued to Charter Communications, Inc. (the ISP) for subscriber information of the aforementioned IP addresses.

i. On or about April 6, 2021, Charter Communications returned the following:
    i. Subscriber Name: Mark WALLIN
    ii. Subscriber Address: 3525 Sawtelle Blvd., Apt. 217, Los Angeles, CA 90066 (the "SUBJECT PREMIESES")

*See* Exh. 1 at 30.

Immediately preceding this causal link to Wallin in the Affidavit are the three unique IP addresses associated with the Gmail account "guyf715@gmail.com." *Id.* at 29–30. Ten lines above those three unique IP addresses is the IP address associated with the creation of the Guy Eff Skype account. *Id.* at 29.

Upon discovering Wallin's name and address, HSI agents searched public records to confirm that Wallin presently resided at the address. *Id.* at 30–31. Law enforcement then conducted physical surveillance and saw Wallin's name listed on the mailbox at the address. *Id.* at 31.

The Warrants were signed on August 5, 2021. *Id.* at 2. On August 10, 2021, agents executed the Search Warrants. Exh. 11. Wallin confessed to, among other things, using guyf715@gmail.com to log into Skype to chat with individuals online, including minors as young as 12 years old. *Id.*

### B. Procedural History

On July 22, 2022, Wallin was indicted for sixteen counts related to receiving and possessing child pornography. ECF No. 1 ("Indictment"). On July 18, 2024, Wallin moved to suppress all evidence obtained as a result of the Warrants, including a confession that agents elicited upon execution of the Warrants, the statements of Walin's wife, as well as the items seized. ECF No. 39 (the "Motion"). On August 1, 2024, the Government filed its opposition. ECF No. 44 ("Opposition"). On August 8, 2024, Wallin filed his reply. ECF No. 109 ("Reply").

On August 19, 2024, the Court found "that Wallin has made a 'substantial preliminary showing' of both a misrepresentation and/or omission, and that it was material to a finding of probable cause," and granted Wallin an evidentiary hearing which occurred on August 22, 2024. ECF No. 112. After the evidentiary hearing, the parties submitted supplemental briefing. ECF Nos. 117 ("Def. Supp. Brief"), 119 ("Gov't. Supp. Brief"), 120 ("Def. Supp. Reply").

## II. Applicable Law

The Fourth Amendment protects people and their effects from unreasonable searches and seizures. U.S. Const. amend. IV. Searches and seizures are only reasonable if they are based on probable cause. *Bailey v. U.S.*, 568 U.S. 186, 192 (2013). "The bulwark of Fourth Amendment protection [] is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "A warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165. The foundation of the Warrant Clause is the premise that the affiant must set forth the facts underlying probable cause in good faith. *Id.* This does not require that every fact recited in the warrant affidavit is necessarily correct, since, for example, probable cause can be founded upon hearsay. *Id.* It does, however, require that the affiant believes or has appropriately accepted the information presented in the affidavit as true. *Id.*

When it is revealed after a search and seizure that a warrant affidavit contained a deliberate or reckless false statement, impeachment of the affidavit may become necessary. *Id.* "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. It is, nevertheless, possible for an evidentiary hearing to become necessary when (1) a defendant points to deliberate or reckless falsehood in specific portions of the warrant affidavit; and (2) after setting aside the intentional or reckless falsehoods, the warrant affidavit no longer provides for probable cause. *Id.* "Allegations of negligence or innocent mistake are insufficient." *Id.* If a court holds a hearing and finds material perjury or reckless disregard, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156. If, however, a court finds deliberate or reckless falsehood, adds the omitted material or sets the falsehood aside in the warrant affidavit, and still finds probable cause within the affidavit, then no evidentiary hearing is required. *Id.*

## III. Discussion

To prevail on a *Franks* challenge, the defendant must establish two elements by a preponderance of the evidence: first, that the affiant officer *intentionally or recklessly* made false or

misleading statements or omissions in support of the warrant, and second, that the false or misleading statement or omission was *material*, *i.e.*, necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (emphasis added).

Wallin argues that SA Baker misrepresented in his affidavit that the IP address used to create the subject Skype account was connected to Wallin and his residence, and omitted the contents of Exhibit 5, showing that the subject Skype account had no data of any "IP connection History" during the alleged offense period. Wallin argues that this omission and this misrepresentation were material because they provided the basis to believe that Wallin was the one who used the Guy Eff Skype account to send the incriminating messages. For the reasons outlined below, to the extent that intentional or reckless misrepresentations or omissions occurred, they were not material to a finding of probable cause. Accordingly, the Court DENIES the Motion.

**A. The Court Finds a Preliminary Showing of a Misrepresentation and Omission.**

The first prong of the two-part test articulated in *Franks* requires the defendant to point to specific claimed falsehoods in the warrant affidavit as proof that the affiant made intentional or reckless misrepresentations. *Franks*, 438 U.S. at 171. The defendant must show that the affiant "knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application." *Perkins*, 850 F.3d at 1116. Wallin points to a misleading statement and to an omission in the Affidavit, both of which he argues were made intentionally or with reckless disregard for the truth. As discussed below, while the Court finds that Wallin did make a substantial preliminary showing that there was a misrepresentation and/or omission, the Court need not determine whether they were made intentionally or recklessly.

i. <u>The Court finds that the Affidavits contained a misrepresentation.</u>

The language that describes the Charter Communications summons return reads: "On or about March 26, 2021, a summons pursuant to 19 U.S.C. §§ 1509 was issued to Charter Communications, Inc. (the ISP) for subscriber information of the aforementioned IP addresses." Exh. 1 at 30. Immediately prior to this sentence is a list of three unique IP addresses associated with the subject Gmail account (the "Google IPs"). One section above that is an IP address associated with the account creation of the subject Skype account from Microsoft (the "Microsoft IP"). It is

unclear from the face of the document if "aforementioned" means only the Google IPs, or both those and the Microsoft IP. While the government argues that a "plain reading" of the Affidavit shows that the agent meant only the Google IPs, this does not comport with the definition of the word "aforementioned." *See* Dictionary.com, http://dictionary.com/browse/aforementioned (last visited Aug. 8, 2024), https://perma.cc/5RBU-3NGT, (defined as "cited or mentioned earlier or previously"). The Microsoft IP, similar to the Google IPs, was in fact previously mentioned two short sections prior (and right before the Google IPs). The government also notes that the label of the Microsoft IP was "Account Creation IP," not "IP Address" like the Google IPs are labeled in their chart. However, an "Account Creation IP" clearly still falls under the category of an IP address.[5]

Accordingly, the Court finds that the language is ambiguous, and could have misled the magistrate judge to conclude that the Microsoft IP was also directly connected to Wallin and his residence. While the Court finds this sufficient to be a misrepresentation, the Court does not find it necessary to reach the issue of whether this misrepresentation was intentional or reckless—as explained in Section III.B, *infra*, the Court does not find this mispresentation material.[6]

    ii.    The Court finds that the Affidavits contained an omission.

Wallin argues that it was an omission in the Affidavits to exclude that no IP address data was associated with the subject Skype account during the relevant conduct period. The Court agrees that there was an omission in a technical sense—the lack of data was not included or referenced in any

---

[5] The Government provides an internal Report of Investigation created by SA Baker on May 17, 2021, almost three months before the warrant affidavit was filed, that uses "aforementioned" in the same way to describe the IP address information. ECF No. 107-1. But, it is unclear how the usage of this word in the same way on an internal report "underscores" SA Baker's intentions in any way. Opposition at 11. At most, it shows that SA Baker was consistent in his usage of the word, but sheds no light on what he intended to reference.

[6] The Court also does not find that SA Baker's statement that the collective records from Microsoft, Google, and other sources, "show[ed] that Skype user 'Guy Eff' is Wallin" is misleading, as it is true that it was the collective evidence that led to the conclusion. Reply at 7. The Court finds this to be true regardless that a prior draft of the affidavit had used the language that the evidence "resolves to" Wallin. *See* Def. Supp. Brief at 2.

Wallin also raises one other statement which he argues "appears to be a misstatement"—that SA Baker stated that he reviewed "data seized pursuant to legal process in the United States and Canada," but the police reports reflect that MFV's laptop was seized prior to a warrant being issued. Motion at 13, fn. 4. However, Wallin only states that this is an "apparent violation of Canadian law," without providing any applicable authority. Accordingly, the Court declines to find this a misrepresentation.

way in the Affidavits, despite being part of the return of information subpoaned from Microsoft. Nevertheless, for the reasons explained below, the Court does not find this omission material and therefore does not reach whether it was intentional or reckless.

### B. The Court Does Not Find Any Misrepresentation or Omission Material

The second *Franks* prong requires a court to "set to one side" the subject of the alleged falsity or reckless disregard and reexamine the corrected warrant affidavit. *Franks*, 438 U.S. 154 at 171–72. To find probable cause, a court asks not if there was then enough evidence to arrest Wallin, but whether there was "a 'fair probability' that contraband or evidence is located in a particular place." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). To meet this "fair probability" test, a court should look for evidence in the affidavit "(1) that a crime was committed; (2) that it was [the defendant] who committed the crime; and (3) that evidence of the crime would be found in the place to be searched." *Chism v. Washington State*, 661 F.3d 380, 389 (9th Cir. 2011).

Here, even assuming the misrepresentation and omission were intentional or reckless, the Court's de novo review concludes that neither reached a level of materiality, since they can be set to one side and still leave sufficient evidence to support probable cause. Correcting the affidavit here is simple. In describing the Charter Communications return, instead of saying: "On or about March 26, 2021, a summons pursuant to 19 U.S.C. §§ 1509 was issued to Charter Communications, Inc. (the ISP) for subscriber information of the aforementioned IP addresses"—the affidavit could read "for subscriber information of the Gmail IP addresses." In addition to this change, the affidavit could correct the omission by saying Microsoft returned a document showing "no data" of any "IP connection history" during the period of the alleged offense. After these corrections, the Court finds that the affidavit still provides evidence sufficient to meet the "fair probability" test:

(1) MFV's mother reported her discovery of child pornography involving the subject Skype account that occurred during April 2020.

(2) The current email address associated with the Skype account was "guyf715@gmail.com," which is the same profile name as the Skype account itself ("guyf715").

(3) A summons return from Google provided three unique IP addresses associated with the subject email account.

(4) A summons to Charter Communications seeking information on the three unique IP addresses associated with the subject email account provided investigators with Wallin's name and residence address.

The first piece of information sufficiently shows that a crime was committed, and the latter three support a reasonable inference that Wallin committed the crime. Wallin argues that "there was no evidence directly linking" Wallin to the Skype account, but provides no authority supporting that probable cause requires such direct evidence. Motion at 14. Rather, probable cause may be met even "without concrete evidence" if it appears "likely" that the alleged act occurred "from the facts averred in the affidavit and *reasonable inferences* drawn from them." *Kelley*, 482 F.3d at 1052 (emphasis added). The Court finds that it reasonable to infer that the person using the email account for "guyf715@gmail.com" also used the "guyf715" Skype account, which is the sole inference that must be drawn without any further evidentiary basis. Thus, this singular inference is distinguishable from the chain of inferences deemed "less and less likely to be true" by the Ninth Circuit in *Weber* and *Chism*.[7] In *Weber*, the Ninth Circuit found a chain of inferences leading to the conclusion that pornographic material would be found at the defendant's house unreasonable, when the only actual evidence linking the defendant to the conduct was that "a customs agent, almost two years previously, had identified advertising material addressed to [the defendant] as 'apparently' child pornography." *Weber*, 923 F.2d at 1344. There, not only would one have to infer that the defendant had ordered the material to begin with, one would have to infer that the defendant made other orders, and kept the physical products for years, despite being notified that a package had been intercepted from contraband—all based on *one* piece of evidence. *Id.*

Here, the inferences do not build on each other in such a successive manner that makes the last inference "less and less likely to be true." *Id.* at 1345. There is independent evidence supporting the other "inferences" Wallin argues must be made. *See* Motion at 15. First, the Affidavit provides a basis to believe that the incriminating messages were sent from the "guyf715" Skype account, and Microsoft's inability to provide data for the IP connection does not provide a reasonable basis to

---

[7] *U.S. v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990); *Chism*, 661 F.3d at 391.

refute this fact. The investigators, upon review of MFV's laptop and Skype messages, identified "Guy Eff" as the username and the profile name as "guyf715." Ex. 1 at 121, n.3.[8] Wallin argues that the lack of evidence returned by Microsoft "flatly contradict[s] the government's theory" that Wallin used the Skype account to commit the alleged offenses. Motion at 12. But, the lack of evidence does not contradict the theory—rather, it does not move the needle in any way towards the likelihood that Wallin used the Skype account. Wallin argues that if he used the Skype account, "Microsoft's records would presumably show that [his] IP address was used" during that period. Motion at 12. However, based on the messages identified by the investigators, the Skype account *was* used during the relevant conduct period, and no IP data was collected regardless. Wallin uses an analogy that this is like a security camera pointed at a crime scene that upon retrieval, shows no crime happening. Def. Supp. Brief at 3. But, this is more akin to the security camera footage showing no footage at all (whether the camera turned off, the data was corrupted, the footage was overwritten, or any other number of possibilities)—it does not compel a conclusion that the crime did not happen, especially if there is independent evidence that the crime did happen at that time and place.

The Court does not speculate as to why there was no data found by Microsoft, but finds that the Affidavit provides grounds to believe that the account was used to send the messages at issue. *See* Ex. 1 at 121–23. Microsoft's "No Data Found" result does not undermine the basis to believe that the messages were sent from the "guyf715" account, given the existence of said messages. Ex. 5. While it may be possible that the lack of data provides some evidence to contradict that the account was used at all, in the face of the clear evidence that it was used, SA Baker was not required to include this fact. *See United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008) (explaining that "the omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search"); *see also United States v. Colkley*, 899 F.2d 297, 302 (4th

---

[8] Wallin argues that SA Baker only reviewed a forensic extraction of the chats—not the original ones—thus, there is a possibility that the names or dates were altered. Def. Supp. Brief at 3–4. But, Wallin provides no basis to believe that a forensic extraction is unreliable nor that this particular extraction should not have been relied on by SA Baker.

Cir. 1990) (rejecting contention that the "Fourth Amendment requires an affiant to include all potentially exculpatory evidence in the affidavit"). Moreover, the Court found SA Baker credible at the evidentiary hearing in his testimony about why he omitted the "No Data Found" result, and that he did not believe the result reasonably supported a conclusion that the Skype account was not used at all during the relevant time. Wallin cites no authority that an investigator must be "qualified as an expert" to make common sense inferences for purposes of probable cause. Def. Supp. Reply at 3.

Therefore, the lack of data produced by Microsoft on the Skype account is insignificant without more context, as it does not tend to show that the account was connected or not connected to Wallin either way. *See Perkins*, 850 F.3d at 1117 (finding omissions where an agent "selectively included information bolstering probable cause, while omitt[ing] information that did not").[9] *Chism*, another case cited by Wallin, is even more distinguishable, as there, the affidavit omitted that the IP addresses at issue were traced to various individuals *other* than the defendant, and the only piece of evidence linking the defendant to the alleged crime was *his wife's* name on the method of payment related for the hosting fees on the site (to which illegal images were then uploaded at some unknown date, time, and location). *Chism*, 661 F.3d at 390–91. Here, the Skype account is directly linked to the criminal activity, and the sole inference that must be drawn is that the user of the Skype account would be the same individual as the owner of its registered email address. The Court finds this a reasonable and common-sense inference to make, which meets the threshold for probable cause.[10] Moreover, it does not appear that the magistrate judge had any concern here that there was someone other than Wallin who could have been associated with either the Skype account or the email account, and there is no indication that anyone else was potentially associated with the account. As the Court does not find the lack of data produced by Microsoft to either undermine the fact that the

---

[9] The Court notes that SA Baker appears to have excluded information that would have supported probable cause as well—namely, that the Google summons returned information showing that the email and the Skype account were created on the same day, *within two minutes of each other*. *See* Exs. 4, 7.

[10] To the extent that Wallin argues that SA Baker had no way of knowing whether someone else on Wallin's network was using the account, the possibility of that does not make the inference that Wallin was using his own network to access the account unreasonable, and investigators do not have to rule out such hypothetical scenarios for purposes of probable cause. *See Craighead*, 539 F.3d at 1081. And, regardless of who was actually using the account, there would still be probable cause sufficient to search the location itself.

messages were sent from the Skype account, nor provide any significance in determining Wallin's connection to the account, the Court does not find the exclusion of this specific fact a material omission. *See also Ewing v. City of Stockton*, 588 F.3d 1218, 1226 (9th Cir. 2009) (noting that where an affiant omitted a witness's non-identification of a defendant, "given the strength of [another witness's] identification, this omission does not cast doubt on probable cause").

Next, there is also independent basis to believe that the devices used for criminal conduct in April of 2021 would still be found with Wallin in August 2022, and still contain evidence of that criminal conduct. In particular, the messages and communications at issue were sent via electronic devices, and have an electronic footprint that would be likely to have more permanence than the *physical* products at issue in *Weber*. *See also U.S. v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997) (finding that the "nature of the crime 'provided 'good reason[]' to believe the *computerized* visual depictions downloaded by Lacy would be present in his apartment when the search was conducted ten months later") (emphasis added). The Court does not find that the time lapse between the criminal activity and the seeking of the warrant (16 months) to defeat a finding that there was a "fair probability" that evidence of the crime would be at Wallin's residence, as the Affidavit provided sufficient basis for believing "that the items to be seized are still on the premises." *U.S. v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013). In particular, SA Baker stated that based on his training and experience, individuals "who have a sexual interest in children or images of children . . . often maintain possession of these items for long periods of time," and that "[d]igital child pornography on a digital device is easy to maintain for long periods of time." Ex. 1 at 32–33. Here, the crime was committed over Skype and led to the creation of videos and photos virtually sent to the perpetrator, and it would be reasonable to infer that such digital evidence would still exist after 16 months.

Accordingly, the Court finds that Wallin has not made a sufficient showing that any mispresentation or omission was material to the probable cause determination.

/ / /

/ / /

### C. The Court Does Not Find a *Brady* Violation

In his supplemental briefing, Wallin separately argues for sanctions under *Brady*[11] and its progeny for the belated disclosure of the Microsoft return in the form of exclusion of evidence. *See* Def. Supp. Brief at 7. Wallin compares the Government's argument to those made by prosecutors in *United States v. Bundy*, where prosecutors resisted providing evidence specifically requested by the defendants that was relevant to their defense theory because they thought the evidence was "unremarkable and prove[d] nothing." 968 F.3d 1019, 1032–33 (9th Cir. 2020). But, the evidence withheld in *Bundy* were plainly relevant to the credibility of statements made by the defendants. Here, it did not appear obvious that the results of Microsoft's subpoena return were relevant to any theory of defense Wallin had, as he never disputed that he sent the messages at issue.[12]

Regardless, the Court does not find that the evidence is "material to guilt or innocence" in this case. *See U.S. v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988). Wallin argues that *Brady* applies equally to all defendants regardless of whether they contest the allegations against them, as it applies to evidence favorable to a motion to suppress—but here, Wallin did bring the instant Motion based on the Government's disclosure of the Microsoft subpoena return. And, as discussed above, the Court does not find suppression warranted, even with the inclusion of the specific evidence that is at the core of the *Brady* dispute. *Id.* (noting that evidence is material only if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Even if the evidence could be considered material, the Court would still not find exclusion to be an appropriate remedy given that it was produced months prior to trial and Wallin has had sufficient time to incorporate this evidence into his defense. *Id.* ("To escape the *Brady* sanction, disclosure 'must be made at a time when the disclosure would be of value to the

---

[11] *Brady v. Maryland*, 373 U.S. 83 (1963).

[12] The Government notes that its report of investigation was produced to Wallin as early as 2022, where the existence of the Microsoft subpoena and return was made known to Wallin. *See* ECF 107-1 at 3. In particular, the report notes that Microsoft "issued information, *including* the following," but did not purport to set forth all the information returned. *Id.* (emphasis added). *See U.S. v. Bond*, 552 F.3d 1092, 1095–96 (2009) (no suppression where "defendant has enough information to be able to ascertain the supposed *Brady* material on his own" and "there was no government action to throw the defendant off the path of the alleged *Brady* information").

accused.'"). Where evidence is disclosed "while [it is] still of substantial value at trial," "even assuming the [evidence is] exculpatory and material, there [is] no due process violation under *Brady*." *Id.*

Accordingly, the Court does not find a *Brady* violation based on the Government's late disclosure of the Microsoft subpoena return.[13]

## IV. Conclusion

For the foregoing reasons, the Court DENIES the Motion to Suppress. The Court further continues the current deadline for the Government to file its pretrial documents from September 12, 2024, to September 13, 2024.

IT IS SO ORDERED.

Dated: September 11, 2024

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[13] Given the Court does not find a violation, the Court declines to grant Wallin's request for further disclosures about *Brady* compliance.